IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOSHUA W. H., | CV 23-90-H-KLD |
| Plaintiff, | |
| vs. | ORDER |
| LEE DUDEK,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.

I.    **Procedural Background**

Plaintiff protectively filed an application for supplemental security income benefits in June 2020, alleging disability beginning in August 2019 based on mental impairments. Administrative Record (AR)[2] 197-206. Plaintiff also asserted that he suffers from debilitating pain, including back pain, and headaches. *See e.g.*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Commissioner of Social Security is automatically substituted as the defendant.

[2] The AR can be found at Docket No. 16.

AR 75, 85. Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. AR  40-57, 98, 130. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated March 21, 2023, the agency's final decision for purposes of judicial review. AR 1-7. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    <u>Legal Standards</u>

### A.    **Standard of Review**

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.     Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.    <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the June 11, 2020, application date. AR 42. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, Asperger's syndrome, somatic symptom disorder, personality disorder, and post-traumatic stress disorder (PTSD). AR 42. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments 20

C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

AR 44.

The ALJ then found that Plaintiff had the residual functional capacity to

perform medium work as defined in 20 C.F.R. § 416.967(c)[3] as follows:

> He can stand and/or walk for about six hours in an 8-hour workday with
> normal breaks, and can sit for about six hours in an 8-hour workday with
> normal breaks. Normal breaks are defined as breaks occurring every two
> hours with two breaks lasting at least 10 minutes, and one lasting at least 30
> minutes. The claimant has an unlimited ability to climb ramps or stairs,
> balance, stoop, kneel, crouch, and crawl. He has unlimited ability to climb
> ladders, ropes, or scaffolds. The claimant can understand, remember, and
> carry out simple tasks, and can maintain attention, concentration,
> persistence, and pace for such tasks for an 8-hour workday and 40-hour
> workweek. He can tolerate occasional interaction with supervisors, co-
> workers, and the public. He can never work in tandem with supervisors and
> co-workers. He can never work directly with the public as part of work
> duties. He can tolerate usual simple work situations. He can tolerate
> occasional changes in a routine work setting. He can never work at a fast or
> fixed production rate or pace, but can perform goal-oriented work.

AR 46. At step four, the ALJ found that Plaintiff had no past relevant work. AR

55. At step five, the ALJ found based on the vocational expert's testimony that

other jobs exist in the significant numbers in the national economy that Plaintiff

could perform, including unskilled light work as a housekeeping cleaner, office,

helper, and photocopy machine operator. AR 56. The ALJ therefore determined

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c),
416.967(c). The ALJ found that Plaintiff could "lift/carry/push/pull 25 pounds
occasionally, and 50 pounds frequently." AR 46.

that Plaintiff has not been disabled since the June 11, 2020, application date. AR 56.

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises four primary issues on appeal. First, Plaintiff argues the ALJ erred by not including headaches and back pain as severe impairments at step two. (Doc. 10 at 20). Second, Plaintiff contends the ALJ improperly evaluated medical opinions provided by Susan DePasquale, APRN, and consultative examiners Dr. Mark Mozer and Dr. Eric Thomas, as well as the prior administrative medical findings (PAMFs) of state-agency medical consultant Dr. Arvin Chopra. (Doc. 10 at 23, 27). Third, Plaintiff maintains the ALJ did not provide clear and convincing reasons for discounting his subjective testimony. (Doc. 10 at 30-33). Finally, Plaintiff argues the ALJ erred by failing to incorporate all of his impairments and resulting limitations into a hypothetical question presented to the vocational expert. (Doc. 10 at 32). The Court addresses these arguments in the order set forth below.

### A.    Severe Impairments

The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1990). At this step in the sequential evaluation process, the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings demonstrating that he has a severe impairment or combination of impairments that hast lasted or can

be expected to last for a continuous period of not less than twelve months. *Ukolov*

*v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* 20 C.F.R. §§

404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). A severe impairment is

one that significantly limits the claimant's "physical or mental ability to do basic

work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not

severe if it is merely 'a slight abnormality (or combination of slight abnormalities)

that has no more than a minimal effect on the ability to do basic work activities."

*Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security

Ruling (SSR) 96-3p). When the ALJ determines that a claimant has at least one

severe impairment, she must consider all impairments, including non-severe

impairments, at subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at

1290.

### 1.    Headaches

Plaintiff argues the ALJ erred by not including headaches as a severe

impairment at step two. (Doc. 10 at 20-21).

SSR 19-4p provides guidance on how the ALJ is to determine whether the

claimant has a medically determinable impairment of primary headache disorder,

and distinguishes secondary headaches that are typically symptoms of another

underlying medical condition. SSR 19-4p, 2019 WL 4169635, at *6 (Aug. 26,

2019). The ruling explains that the ALJ will consider the following combination of

findings in determining whether the claimant has a primary headache disorder: a primary headache disorder diagnosis from an acceptable medical source; an observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an acceptable medical source; remarkable or unremarkable findings or laboratory tests; and response to treatment. SSR 19-4p, 2019 WL 4169635, at *6.

As the ALJ recognized, SSR 19-4p requires that a medically determinable impairment "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." AR 43, citing SSR 19-4p, 2019 WL 4169635, at *2. Although Plaintiff complained of migraine headaches, the ALJ found that the medical record did not document chronic headaches over an extended period. AR 44. The ALJ noted that Plaintiff had not been examined by a neurologist or other specialist for treatment of headaches, and had not taken medication specifically designed to treat headache pain. AR 44. Based on her review of the medical records, and because there was "no diagnosis of a migraine headache disorder by an acceptable medical source," the ALJ found that Plaintiff's alleged migraine headaches were not a medically determinable impairment.  AR 44.

Plaintiff contends the ALJ overlooked medical evidence demonstrating that he does in fact have a primary headache disorder. (Doc. 10 at 20-21). Specifically,

Plaintiff cites treatment notes from a handful of appointments at AWARE Psychiatry Service between March 2021 and July 2022 reflecting that Plaintiff reported having headaches, and at one point had been prescribed Topomax for "headache/mood." AR 459, 584, 633. Although the record reflects that Plaintiff reported to his mental health care provider, APRN DePasquale, that he suffered from headaches, SSR 19-4p makes clear that the existence of a headache disorder cannot be "based on only on . . . a statement of symptoms." SSR 19-4p, 2019 WL 4169635, at *6.  Consistent with the ALJ's reasoning, the records Plaintiff relies on reflect that notwithstanding his self-reported headaches, no medical source has diagnosed Plaintiff with a headache disorder. And while Plaintiff was prescribed Topomax for "headache/mood," it does not appear that he was prescribed additional medication specifically for headaches.

Plaintiff also points to a physical consultative examination performed by Dr. Eric Thomas in December 2021, during which Plaintiff reported a history of migraine headaches lasting three to four days. AR 544. Although Dr. Thomas recommended that Plaintiff follow up with a neurologist regarding his headaches, there is no indication that Plaintiff did so. AR 549. Dr. Thomas not diagnose Plaintiff with a headache disorder and did not identify any headache related functional limitations.

Plaintiff does not point to any medical evidence indicating that he suffers from headaches that would limit his ability to perform basic work activities. To the extent Plaintiff argues his own testimony demonstrates that his headaches constituted a severe impairment, the ALJ properly discounted his symptom testimony as discussed below. For these reasons, the ALJ's step two assessment that Plaintiff's headaches were not a medically determinable severe impairment is supported by substantial evidence.

### 2.    Back Pain

Plaintiff argues the ALJ overlooked medical records establishing that his "back pain" is a severe impairment, and again relies on treatment notes from a few appointments at AWARE Psychiatry Service between April 2021 and October 2022.  (Doc. 10 at 21, citing AR 468-70, 514-16, 583-584). Although Plaintiff refers to an April 22, 2021, appointment, APRN DePasquale's therapy notes from that session do not mention back pain and do not diagnose a back impairment. AR 468-70. Plaintiff also points to an August 30, 2021, appointment during which he reported "that he had terrible back pain and that every joint in his body moved and dislocated if he made the slightest move." AR 514. But the notes from this appointment additionally reflect that Plaintiff "made exaggerated body movements … in a show of major pain," appeared "confabulatory" and "histrionic," and "was fixated on steps to obtain disability for a mental illness." AR 514-15. On October

7, 2021, Plaintiff again reported back pain, and his provider observed that throughout the session he "routinely stretched his body and grimaced as though in pain" but also reported that his "homemade remedy takes pain away for 15 hours." AR 584. The provider described Plaintiff as "somatic" and wrote that "[h]e appeared overinclusive and histrionic mildly, grimacing and making exaggerated movements with his upper body as though in pain." AR 584. Finally, on October 17, 2022, Plaintiff reported that "about 5 discs in [his] back are out" but said x-ray imaging showed "just a muscle issue." AR 583. These mental health records do not assess or diagnose any medically determinable back impairment and are consistent with the ALJ's step-two determination that Plaintiff's alleged "back pain" did not constitute a severe impairment.

Plaintiff further contends that the ALJ should have given more weight to Dr. Thomas's December 11, 2021, consultative physical examination report when evaluating the severity of his alleged back pain. (Doc. 10 at 21, citing AR 544). During Dr. Thomas's examination, Plaintiff reported that his "current back pain is 5/10 and goes up to 10/10 if [he] is using it when lifting/moving a certain way and triggers it." AR 544. Dr. Thomas's back examination findings showed "[n]ormal appearing spinal alignment without evidence of scoliosis, no step offs on palpating spinous processes, no spasm, with good muscle bulk and conditioning." AR 545. Dr. Thomas identified "[p]araspinal muscle tenderness about T5-L2 with no free

range of motion at trunk," positive straight leg raise in the supine position, negative Spurling sign,[4] and negative FABER test but with limited bending knee flexion.[5] AR 545. Physical examination findings showed 5/5 normal muscle strength except 4/5 strength in Plaintiff's left lower extremity, and normal range of motion of the cervical and lumbar spine. AR 546-47.

The ALJ summarized Dr. Thomas's examination findings, which did not reflect any significant abnormalities. The ALJ emphasized that apart from this one-time consultative examination, there was "no evidence of any further evaluation or treatment for [Plaintiff's] musculoskeletal complaints" in the record. AR 43. Given that Plaintiff received little if any treatment for back pain, the ALJ reasonably found that his "orthopedic pain complaints" would have no more than a minimal effect on his ability to function and were therefore non-severe. AR 43. Nevertheless giving Plaintiff the doubt, the ALJ explained that as part of the step-four residual functional capacity assessment she would include a limitation to medium work activity due to Plaintiff's somatic disorder. AR 43.

---

[4] A Spurling test is used to diagnose cervical radiculopathy. *See* https://www.physio-pedia.com/Spurling's_Test.

[5] A FABER test is a diagnostic tool used to identify measure range of motion in the hips, lumbar spine, and sacroiliac regions. *See* https://www.physio-pedia.com/FABER_Test.

To the extent Plaintiff asserts the ALJ had a duty to further develop the record on the issue of his back pain, the Court disagrees. (Doc. 10 at 22). The "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The Social Security Administration developed the record by ordering Dr. Thomas's consultative examination, and his opinion was not ambiguous or inadequate. (AR 144, 544). Plaintiff has not shown that the ALJ was required to order another consultative examination or otherwise develop the record any further.

Even if the ALJ's step-two analysis was deficient, any error was harmless because the ALJ addressed Plaintiff's alleged back pain, and Dr. Thomas's and Dr. Chopra's opinions, later in the sequential evaluation process when assessing Plaintiff's residual functional capacity. See *Burch v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir. 2005) (an ALJ's failure to find a particular impairment severe at step two is harmless error where the impairment was considered in determining the claimant's residual functional capacity); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ considered evidence relating to an impairment at step four, any error in failing to identify that impairment as severe at step two was harmless).

14

### B.    Subjective Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony.  (Doc. 10 at 30-32).

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden and there is no evidence of malingering, the ALJ must provide "clear and convincing reasons" for discrediting the claimant's subjective symptom testimony. *Carmickle v. Commissioner of Social Security*, 533 F.3d 1155, 1160 (9th Cir. 2008). If there is affirmative evidence that the claimant is malingering, however, the "clear and convincing reasons" standard does not apply. *Carmickle*, 533 F.3d at 1160. "A specific finding of malingering is not required; affirmative evidence suggesting malingering is sufficient."[6] *Ray E. v. Kijakazi*, 2021 WL 7185092, at *9 (E.D. Wash. Dec. 7, 2021) (citing *Carmickle*, 533 F.3d at 1160 n. 1).

---

[6] Malingering is the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 683 (4th ed. 1994).

Here, the ALJ found Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms. The ALJ then found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. AR 47.

Plaintiff testified that at the time of the hearing he was working four hours a day, five days a week, as a dishwasher at Taco Johns but usually had to leave halfway through his shift "due to pain." AR 69. He testified that he has memory issues and needs reminders for self-care. AR 71. Plaintiff explained that for the last several years he had been experiencing migraine headaches lasting four to five days. AR 74. He testified that over-the-counter medications like Aleve and Tylenol do not provide relief, and to find relief he sleeps and spends time in a dark room. AR 74-75. Plaintiff testified that he has pain that goes from his feet through his knees, legs, entire back, shoulders, head, arms, elbows, wrists, and head. AR 75. He said that it feels "like needles going all through [his] body entirely," and as a result he can only stand for 20 minutes at a time. AR 75. Plaintiff stated that every day he has pain and cramping in his hands that makes it difficult to hold things. AR 80. He testified that pain medication does not help, and that he lives with daily pain resembling "a constant needle, pins, like somebody's hitting you with a

sledgehammer or worse type of pain, repeatedly, throughout your entire body every few seconds." AR 81, 87.

The Commissioner argues the ALJ was not required to provide clear and convincing reasons for discounting Plaintiff's testimony because there is affirmative evidence of malingering in the record. (Doc. 16 at 14). For example, the ALJ cited APRN DePasquale's treatment notes from August 2021 reflecting that Plaintiff made exaggerated body movements, tensed in a show of major pain, "appeared confabulatory, histrionic, and easily disinterested or bored in discussion of progress goals," and was "fixated on steps to obtain disability for mental illness." AR 49, citing AR 514-15. The ALJ also discussed an August 2022 treatment note observing that Plaintiff was less somatic than previously, but "negative traits and malingering qualities persisted." AR 50, citing AR 718. Additionally, the ALJ pointed to a February 2023 mental status exam performed by APRN DePasquale that expressly documented "malingering traits." AR 51, citing AR 724.

Although the record does, as the Commissioner contends, contain affirmative evidence malingering that arguably provides a basis discrediting Plaintiff's testimony, the ALJ also provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. In addition to citing evidence of malingering, the ALJ found that Plaintiff's allegations

physical pain and headaches were not consistent with the objective medical evidence. The ALJ considered these allegations as a component of Plaintiff's somatic symptom disorder. AR 43, 44, 47-52. As addressed above, the ALJ reasonably found that despite Plaintiff's complaints of debilitating headaches, he had not been treated by a specialist, and other than Dr. Thomas recommending that Plaintiff follow up with a neurologist for his claimed headaches, no acceptable medical source had diagnosed with Plaintiff a headache disorder. AR 44, 549. Also as addressed above, contrary to Plaintiff's testimony of daily debilitating pain throughout his body that limited him to standing only 20 minutes at a time, the ALJ noted that Dr. Thomas's physical examination findings did not reveal any significant abnormalities and there was no evidence of any further evaluation or treatment of Plaintiff's musculoskeletal complaints in the record.  AR 42-43, citing 544-46.

The ALJ reasonably found that Plaintiff's testimony as to the severity of his pain was not consistent with what little objective medical evidence existed, and was not corroborated by the record as a whole. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Carmickle*, 533 F.3d at 1161

("Contradiction with the medical record is a sufficient basis for the rejecting the claimant's subjective testimony.")

Turning to Plaintiff's alleged mental limitations, the ALJ found that contrary to Plaintiff's testimony that he had memory issues and difficulty following instructions, Plaintiff's mental status examination findings were fairly benign with fair cognition, recent and remote memory, and attention and concentration. AR 48, citing AR 401. The ALJ also noted that consultative examiner Dr. Mozer found that Plaintiff's "memory/concentration seems to be good," scored in the normal range overall, and there was "nothing that could be viewed as a vocational handicap." AR 50, citing AR 556.

Finally, the ALJ discounted Plaintiff's testimony based on inconsistencies between his allegations of disabling pain and his daily activities. An ALJ may discount a claimant's testimony based on daily activities that either contradict his testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). *See also, Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). For example, the ALJ cited evidence that Plaintiff engaged in a range of activities, including performing maintenance on his uncle's home such as installing windows and roofing (AR 416, 422), whittling and knife throwing (AR 245), and playing

pool (AR 556). AR 51. The ALJ also considered the fact that Plaintiff worked part-time, noting for example that he stated quit his job at Taco John in August 2022 because they were serving rotten food, and in October 2022 he reported getting his job back and said it was going better under new management. AR 51, citing 718. Although the ALJ found this work activity was not performed at the level of substantial gainful activity (AR 42), she legitimately found that Plaintiff's part-time work other daily activities undermined his allegations of debilitating pain and limitations.

The Court may not substitute its own, or the Plaintiff's, interpretation of the evidence for the ALJ's reasonable interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002). *See also Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (Even if the record is "susceptible to more than one rational interpretation," if the ALJ's decision is supported by substantial evidence it must be upheld."). Therefore, the Court concludes that in addition to citing affirmative evidence of malingering, the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's symptom testimony.

### C.    Medical Opinion Evidence

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the

administrative level. See Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff applied for

disability benefits in June 2020, the amended regulations apply in this case.

The amended regulations do away with the traditional hierarchy between

treating, examining, and non-examining physicians, and instead direct the ALJ to

consider all medical opinions and prior administrative medical findings, and

evaluate their persuasiveness using several listed factors. 20 C.F.R. §§

404.1520c(a), 416.920(a). Those factors include supportability, consistency,

relationship with the claimant, specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding."

20 C.F.R. §§ 404.1520c(c), 416.920(c).

While the new regulations eliminate the hierarchy between treating,

examining, and non-examining medical sources, the ALJ must still provide legally

sufficient reasons supported by substantial evidence for finding a medical opinion

unpersuasive. *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The

"new regulations still require the ALJ to explain his or her reasoning to specifically

address how he or she considered the supportability and consistency of the medical

opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c,

416.920c).

       1.    <u>Susan DePasquale, APRN</u>

The revised regulations expanded the list of "acceptable medical sources" who can provide objective medical evidence to establish the existence of a medical impairment to include licensed advanced practice registered nurses. 20 C.F.R. § 404.1502(a), 416.902(a). As a licensed advanced practice registered nurse, Susan DePasquale qualifies as an acceptable medical source.

The vast majority of the treating source medical records in this case are from APRN DePasquale and other providers at AWARE Psychiatry Service. AR 20-36, 334-538, 559-739. Plaintiff asserts the ALJ erroneously discounted ARPN DePasquale's "findings and opinions." (Doc. 10 at 27). Plaintiff follows this assertion with four pages setting forth various standards for the evaluation of medical opinion evidence but does not actually point to any specific medical opinion by APRN DePasquale. (Doc. 10 at 27-30). Her treatment notes document mental health therapy sessions with Plaintiff dating back to May 2019 (AR 334), and the ALJ cited and discussed many of those treatment notes in her written decision.

An ALJ is not required to discuss every treatment note in the record. *See Schmitz v. Saul*, 857 Fed. Appx. 368 (9th Cir. May 21, 2021) (citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Treatment notes generally do not constitute medical opinions the ALJ must weigh. Treatment notes must include opinions regarding Plaintiff's limitations or ability to work to be considered a

medical opinion. See 20 C.F.R. § 416.913(a)(2) and 20 C.F.R. § 4041513(a)(2)

("A medical opinion is a statement from a medical source about what you can still

do despite your impairment(s) and whether you have one or more impairment-

related limitations or restrictions" in your work-related abilities.). To the extent

Plaintiff generally asserts the ALJ failed to adequately consider APRN

DePasquale's treatment notes, he does not point to any specific functional

limitations identified in those notes and has not shown that the ALJ erred.

In the opening section of his brief summarizing the medical evidence,

Plaintiff refers to a Mental Disorder Questionnaire Form completed by APRN

DePasquale in October 2021. (Doc. 10 at 12; AR 539-543). APRN DePasquale

observed that Plaintiff's general appearance was neat with no apparent physical

impairment, and made clear that she was not "evaluat[ing] his physical condition."

AR 539. She explained that Plaintiff's primary symptoms were mood-related and

controlled with medication, and stated that he carries a mixed mood state,

personality disorder, and often reports somatic issues. AR 539, 541. In the portion

of the form requesting information about Plaintiff's current level of functioning,

she indicated that he functions independently but has difficulty keeping a job, has

an involved family and a circle of friends, and has worked with his uncle and

provided service work at odd jobs. AR 541-542. As to prognosis, APRN

DePasquale indicated that Plaintiff had improved on medication and therapy when adherent with treatment. AR 543.

Notably, however, she did not identify any specific functional limitations. The ALJ referred to the questionnaire in her decision, noting for example that Plaintiff's mental impairments were reasonably well managed when compliant with appointments and medications. AR 54. But because APRN DePasquale did not identify any specific functional limitations or statements about his ability to perform work-related activities, the ALJ was not required to evaluate the questionnaire under the "medical opinion" framework. Plaintiff has not shown that the ALJ erred in evaluating APRN DePasquale's medical records.

## 2.   Dr. Mark Mozer

Plaintiff contends the ALJ improperly discounted the opinion of clinical psychologist Dr. Mark Mozer, who performed a mental status evaluation on December 16, 2021. (Doc. 10 at 23; AR 554-557). Intelligence testing administered by Dr. Mozer showed that Plaintiff did "reasonably well verbally, and memory/concentration seems to be good. He reads remarkably well. He scores in the normal range, a little below average in some respects, but nothing that could be viewed as a vocational handicap." AR 556. In the diagnosis section of his report, Dr. Mozer stated: "Needless to say, a lot of what we heard today was invalid. We can wonder if some of the tough guy talk was his idea of trying to look disturbed to

enhance his chance of getting disability. The impression is unspecified personality

disorder, with antisocial and narcissistic tendencies." AR 556. Dr. Mozer found

that Plaintiff's intelligence was in the normal range, and although his demeanor,

even if toned down, "would tend to be a turn off to many people," he had made

friends in his mental health program. AR 556. Dr. Mozer indicated that Plaintiff

would likely have problems with concentration, persistence, and pace "probably

mostly related to motivation," and observed that Plaintiff "can keep his mind on

things which interest him," such as spending hours playing video games. AR. 556.

In summary, Dr. Mozer wrote that Plaintiff "is an individual who has been

assigned an assortment of psychiatric labels. I think there is a personality disorder,

and the fact that he held a job at a taco restaurant for three months, twice,

reinforces the impression that he can tone it down and get along with others on the

job. I think that he can work, if he wants to." AR 556.

The ALJ considered Dr. Mozer's report, and consistent with his assessment

found that Plaintiff's personality disorder was severe impairment. AR 42, 58-59.

However, the ALJ found Dr. Mozer's opinion was somewhat "vague and

ambiguous" in that he did not identify any specific functional limitations

associated with Plaintiff's mental impairments other than to note that he would

likely have problems with concentration, persistence and pace due mostly to

problems with motivation. AR 55. In all Dr. Mozer's opinion is consistent with the

ALJ's residual functional capacity assessment. To account for Plaintiff's mental impairments, the ALJ found that Plaintiff could tolerate only occasional interaction with supervisors, co-workers, and the public, could never work in tandem with supervisors and co-workers, and could never work directly with the public. AR 46. The ALJ further found that Plaintiff could tolerate usual simple work situations and occasional changes in a routine work setting, and could perform goal-oriented work but could never work at a fast or fixed production rate or pace. The ALJ reasonably evaluated Dr. Mozer's opinion and found it partially persuasive.

### 3.    Dr. Eric Thomas

Plaintiff further contends the ALJ should have given more weight to Dr. Thomas's consultative physical examination report. (Doc. 10 at 23). As addressed above, Dr. Thomas's physical examination findings showed "[n]ormal appearing spinal alignment without evidence of scoliosis, no step offs on palpating spinous processes, no spasm, with good muscle bulk and conditioning." AR 545. Dr. Thomas described some paraspinal muscle tenderness at T5-L2 and noted a positive straight leg raise in the supine position, but Plaintiff's Spurling test was negative and his FABER test was negative with limited bending knee flexion. AR 545. Plaintiff demonstrated 5/5 normal muscle strength except 4/5 strength in the left lower extremity, and had a normal range of motion of the cervical and lumbar spine. AR 546-47.

26

As to specific functional abilities and restrictions. Dr. Thomas concluded that Plaintiff was limited to frequent sitting, standing, and walking "secondary to his lower back pain."[7] AR 549. Dr. Thomas also concluded that Plaintiff "has limitations in lifting and carrying," in that he "can lift and carry 10-15 lbs frequently on both the left/right side," secondary to Plaintiff's "back pain and possibly history of falling (seizing?)." AR 549.

As addressed above, the ALJ appropriately considered the supportability and persuasiveness of Dr. Thomas's opinion as part of her step-two determination that Plaintiff's back pain did not constitute a severe impairment. AR 43. The ALJ addressed Dr. Thomas's report again at step-four when assessing Plaintiff's residual functional capacity. AR 54. The ALJ ultimately found Plaintiff capable of a range of medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.967(c), 416.967(c). In making this determination, the ALJ necessarily rejected Dr. Thomas's finding that Plaintiff was limited to lifting 10-15 pounds frequently.[8]

---

[7] Frequently is defined as occurring from one-third to two-thirds of the time, or approximately 6 hours in an 8-hour workday. Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5.

[8] The ALJ found that Plaintiff had the residual functional capacity to stand and/or walk for about 6 hours in an 8-hour workday with normal breaks, and sit for the

To the extent the ALJ rejected Dr. Thomas's opinion, she adequately addressed the supportability and persuasiveness factors. Consistent with her step-two analysis, the ALJ found that Dr. Thomas's assessment was not supported by significant objective medical findings and was based in large part on Plaintiff's subjective complaints of back pain. AR 54. As explained above, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony, including his allegations of disabling back pain. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (An ALJ may discredit a medical source opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.").

The ALJ additionally found that Dr. Thomas's opinion was not supported by the objective medical findings in his report, which were not indicative of significant abnormalities. AR 54. The ALJ again emphasized that Dr. Thomas's opinion as to the severity of Plaintiff's limitations was "not consistent with the lack of evaluation or treatment for any physical condition since the application date." AR 54. The ALJ reasonably found the absence of medical records addressing Plaintiff's alleged physical impairments undercut the persuasiveness of Dr. Thomas's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195

---

same amount of time in a given workday. AR 46. This portion of the residual functional capacity assessment is consistent with Dr. Thomas's opinion that Plaintiff was limited to "frequent" sitting, standing, and walking.

(9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (internal citation omitted).

Finally, the ALJ permissibly found that Dr. Thomas's opinion was not consistent with Plaintiff's ability to perform part-time work and engage in physically exertional activities like helping his uncle with home repairs, whittling, knife throwing, and playing pool.  AR 54.  Plaintiff has not shown that the ALJ erred in evaluating the supportability and persuasiveness of Dr. Thomas's opinion.

### 4.    Dr. Arvind Chopra

Plaintiff next contends the ALJ improperly discounted the PAMFs made by the agency medical consultant, Dr. Chopra. (Doc. 10 at 23). Based on his review of the record, including Dr. Thomas's opinion, Dr. Chopra identified the following limitations consistent with the ability to perform light work: occasionally lifting/and or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking (with normal breaks) for a total of about 6 hours in an 8-hour workday; sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday; and unlimited pushing and/or pulling. AR 121.

As with Dr. Thomas's opinion, the ALJ adopted the standing, walking, and sitting limitations identified by Dr. Chopra but found Plaintiff capable of performing the greater lifting and carrying requirements of medium work. *See* 20

C.F.R. §§ 404.1567(c), 416.967(c) (medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. To the extent the ALJ rejected Dr. Chopra's PAMFs, she did so for the essentially the same reasons she rejected Dr. Thomas's opinion. AR 53. The ALJ cited the lack of significant objective medical findings in the record, the lack of evaluation or treatment for any physical condition since the application date other than Dr. Thomas's consultative examination, and inconsistencies with Plaintiff's activities of daily living. AR 53. The ALJ's reasoning is supported by substantial evidence and adequately addresses the supportability and persuasiveness of Dr. Chopra's PAMFs.

Finally, to the extent Plaintiff asserts the ALJ generally failed to comply with SSR 96-8p when assessing his residual functional capacity, the Court is not persuaded. SSR 96-8p recognizes that the residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Plaintiff cites SSR 96-8p at various points in his opening brief in the context of his other arguments, specifically, that the ALJ erred in weighing the medical opinion evidence and rejecting his symptom testimony. (Doc. 10, at 5, 18, 19, 23, 30). For instance, he asserts the ALJ failed to consider that he often left work when overwhelmed and failed to consider the

accommodations provided by his employer. (Doc. 10 at 15). However, the ALJ expressly recognized that Plaintiff worked only part time, and reasonably found that his ability to do so undercut his testimony as to the severity of his symptoms and some of the medical opinion evidence. It is also worth noting that the ALJ found Plaintiff's part-time work did not qualify as past relevant work. AR 55. Plaintiff has not shown that the ALJ failed to comply with SSR 96-8p.

The Court takes this opportunity to note that, even if the ALJ erred by rejecting Dr. Chopra's and Dr. Thomas's opinions as to Plaintiff's lifting and carrying limitations, any error was harmless. Dr. Thomas found Plaintiff could frequently lift 10 to 15 pounds, and Dr. Chopra found he could frequently lift up to 10 pounds, and occasionally lift up to 20 pounds. AR 121, 549. Consistent with these limitations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Although the ALJ found Plaintiff capable of a range of unskilled medium work, all of the jobs she identified at step-five based on the vocational expert's testimony were unskilled light positions. AR 56, 92-93.

### E.    Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all of his impairments and limitations into the hypothetical question presented to the vocational expert.

Hypothetical questions posted to the vocational expert must set out all the limitations and restrictions of the claimant. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ properly weighed medical evidence and provided sufficient reasons for discounting Plaintiff's testimony. The Court has also determined that even if the ALJ erred in finding Plaintiff capable of medium work instead of light work as set forth Dr. Thomas's and Dr. Chopra's opinions, any error was harmless because the jobs identified by the vocational expert at step five involved light-level work. The Court finds that the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step

five of the sequential evaluation process.

## IV.    **Conclusion**

For the reasons discussed above, the Court concludes the ALJ's decision is

based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 19th day of March, 2025.

Kathleen L. DeSoto
United States Magistrate Judge